UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONNIE HAWTHORNE, | No. 2:12-cv-02790-KJN |
| Plaintiff, | |
| v. | <u>ORDER</u> |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff contends that the Commissioner erred by finding that plaintiff was not disabled from October 1, 1996, plaintiff's alleged disability onset date, through the date of the final administrative decision.  (Mot. for Summ. J., ECF No. 18-1.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (Opp'n, ECF No. 21.)  Thereafter, plaintiff filed a reply brief.  (Reply, ECF No. 22.)

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 7, 9.)

1

For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.  BACKGROUND

Plaintiff was born on October 3, 1962, and has an eleventh grade education.[2] (Administrative Transcript ("AT") 52, 122.)  On October 1, 2009, plaintiff applied for SSI alleging an onset date of October 1, 1996.  (AT 122.)  Plaintiff complained of mental illness, headaches, and hearing voices.  (AT 158.)  On January 28, 2010, the Commissioner denied plaintiff's application for benefits, finding that plaintiff was not disabled.  (AT 70.)  Upon plaintiff's request for reconsideration, the determination was affirmed on September 2, 2010.  (AT 78.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on June 23, 2011.  Plaintiff was represented by counsel and testified at the hearing, as did a vocational expert ("VE").  (AT 31, 48.)

In a decision dated August 10, 2011, the ALJ determined that plaintiff's impairments did not prevent her from working and that she was ineligible for benefits.  (AT 24.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on October 15, 2012.  (AT 1.)  On November 13, 2012, plaintiff filed this action to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II. ISSUES PRESENTED

Plaintiff's moving papers raise two issues.  First, plaintiff argues that "the ALJ failed to consider the opinion[s] of the treating doctors."  (Mot. for Summ. J. at 15.)  Second, plaintiff argues that "the ALJ stated she gave significant weight to the [Drs.] Paxton and Nakagawa opinions but 'cherry picked' only the parts of their opinions that supported her position."  (Id. at 17-18.)

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

III.     LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

    A.     Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[3] At the first step, the ALJ concluded that plaintiff had not

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment . . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the

engaged in substantial gainful activity since October 1, 2009, the date plaintiff applied for benefits. (AT 14.) At step two, the ALJ determined that plaintiff had the following severe impairments: "cocaine dependence/abuse, schizoaffective disorder (bipolar type), and borderline intellectual functioning." (Id.)

At step three, the ALJ determined that plaintiff's "impairments, including the substance use disorders, meet sections 12.02, 12.03, 12.04, and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1" such that they render plaintiff disabled. (AT 15.) However, after considering plaintiff's substance abuse in combination with plaintiff's other impairments, the ALJ properly "separate[d] out the impact" of the substance abuse in further considering plaintiff's eligibility for benefits. Bustamante v. Massanari, 262 F.3d 949, 956 (9th Cir. 2001). In so doing, the ALJ found that if plaintiff "stopped the substance use, [plaintiff] would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AT 16.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> If [plaintiff] stopped the substance use, [plaintiff] would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple instructions; make judgments on simple work-related decisions; and respond appropriately to usual work situations and changes in a routine work setting. She is limited to no more than occasional interactions with the public, coworkers, and supervisors.

(AT 17.)

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1    At step four, the ALJ found that plaintiff had no past relevant work. (AT 23.) Finally, at
2  step five, the ALJ relied on the VE's testimony and determined that, considering plaintiff's age,
3  education, work experience, and RFC, there were jobs in significant numbers in the national
4  economy that plaintiff could perform. (AT 23-24.) Specifically, the VE testified that plaintiff
5  would be able to perform the jobs of hand packager, janitor, and laundry worker. (AT 24, 59-61.)
6  Accordingly, the ALJ concluded that plaintiff had not been under a disability as defined in the
7  Act from October 1, 2009, through the date of the ALJ's decision. (AT 24.)

   B.   Plaintiff's Substantive Challenges to the Commissioner's Determinations

   1.   Whether The ALJ Failed To Consider The Treating Physicians' Opinions

10   Plaintiff contends that "the ALJ erred in taking non-treating doctor's opinions over
11  th[ose] of the treating doctors." (Mot. for Summ. J. at 17.) However, none of plaintiff's
12  treating physicians provided *actual opinions regarding plaintiff's functional limitations*.
13  As a result, plaintiff's argument that the ALJ failed to consider plaintiff's treating
14  physicians' "opinions" is not borne out by the evidence of record. While plaintiff's
15  physicians' *treatment notes* are present in the record, the record does not contain any
16  treating physician *opinions* about plaintiff's functional limitations given her impairments.
17  Therefore, in challenging the ALJ's decision regarding the nonexistent "opinions" of
18  treating physicians, plaintiff actually challenges the ALJ's evaluation of the medical
19  evidence more broadly.
20   There is no dispute that plaintiff had severe mental impairments given that the ALJ
21  found her with "severe" schizoaffective disorder and borderline intellectual functioning
22  even aside from cocaine abuse. (AT 14.) The ALJ intended her RFC assessment to limit
23  plaintiff to work that would accommodate the symptoms of those impairments, but
24  plaintiff disagrees with the ALJ's analysis of the medical evidence and argues that "[t]he
25  ALJ's opinion is not consistent with the statements made by the medical experts." (Mot.
26  for Summ. J. at 16.) Plaintiff summarizes various treatment notes in the record and
27  implicitly argues that the ALJ should have extrapolated plaintiff's functional limitations
28  from those treatment notes *and* should have weighted such extrapolations over the actual

5

medical opinions of the consultative examining physician, Dr. Nakagawa, and the non-examining physician, Dr. Paxton. To the extent plaintiff identifies components of the medical evidence that she believes deserved more weight in the ALJ's decision, such disagreement is not grounds for remand, especially given that the medical "evidence is susceptible to more than one rational interpretation."[4] Burch, 400 F.3d at 679.

However, the ALJ properly considered and rationally interpreted the medical evidence of record. Burch, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). The ALJ reasonably found that plaintiff, while having some limitations, would not be entirely disabled were she consistently sober and taking her prescribed medications. (AR 19-21.) As the ALJ stated, plaintiff's medical records confirm that when she is either off her medication or taking crack cocaine, she hears voices. (AT 19, 206, 231, 261.) On the other hand, when plaintiff receives treatment and remains sober, the medical evidence reflects a noticeable improvement in her symptoms. (AT 19-20, 240, 246, 460.) The ALJ considered this and other evidence of record in concluding that plaintiff's symptoms do not completely prevent her from working when she is sober and taking her prescribed medications. (AT 19-21.) The ALJ also gave weight to the only medical opinions of

---

[4] Plaintiff argues that her Global Assessment of Functioning ("GAF") scores provided by various medical professionals demonstrate her disability even during periods of sobriety. (Mot. for Summ. J. at 17-18.) Indeed, plaintiff says her GAF scores "plunged from 60 to 45" during her incarceration and notes that she had a GAF of 35 while she was "clean." (Id.) However, plaintiff's GAF scores do not suffice to prove disability, and the GAF scale "does not have a direct correlation to the severity requirements in [the Commissioner's] mental disorders listings." 65 Fed. Reg. 50746-01, at 50764-65 (Aug. 21, 2000); Doney v. Astrue, 485 Fed. Appx. 163, 165, 2012 WL 2584837, at *2 (9th Cir. July 5, 2012) (unpublished) (citing McFarland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (quoting 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000))); Trinchere v. Astrue, 2008 WL 4395283, at *6 (C.D. Cal. Sept. 3, 2008) ("The ALJ's failure to reference the GAF score does not, by itself, make the ALJ's assessment inaccurate.") (citing cases). Although Doney and McFarland are unpublished decisions and thus only of persuasive value, they are cited herein pursuant to Ninth Circuit Rule 36-3, which provides that "[u]npublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1." Plaintiff's GAF scores during periods of sobriety do not suffice to show that the ALJ's determination is unsupported by substantial evidence.

record that directly address plaintiff's *functional limitations* — those of Drs. Nakagawa and Paxton.  Thomas v. Barnhart, 278 F.3d 948, 954 (9th Cir. 2002) ("Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion").

Moreover, even assuming *arguendo* that some evidence of record might be construed to suggest that plaintiff cannot perform limited work even when sober and taking her medication, this is neither sufficient to show error nor sufficient for a finding of disability.  "The existence of emotional disorder . . . is not *per se* disabling . . . . *[T]here must be proof of the impairment's disabling severity*."  Sample v. Schweiker, 694 F.2d 639, 642-43 (9th Cir. 1982) (internal quotations and citations removed) (emphasis added).  Because she does not identify medical opinion evidence delineating plaintiff's *functional limitations* even during periods of sobriety, plaintiff has not identified "proof of the impairment's disabling severity" during those periods, see id., and plaintiff has not shown that the ALJ erred in giving weight to the opinions of Drs. Nakagawa and Paxton.

In sum, given that the record contains no treating doctor "opinions," it cannot be said that "no good reason exists" for "taking non-treating doctor[s'] opinions over [those] of treating doctors."  (Mot. for Summ. J. at 17.)  Plaintiff's identification of various treatment notes does not suffice to show that the ALJ erred either in analyzing the functional limitations caused by plaintiff's impairments or in giving weight to the opinions of Drs. Nakagawa and Paxton.  Plaintiff has not shown that the ALJ failed to properly consider the nonexistent "opinions" of plaintiff's treating physicians, and the ALJ rationally interpreted the medical evidence of record.  See Burch, 400 F.3d at 679.

    2.    <u>Whether The ALJ's RFC Assessment Improperly Incorporated The Opinions of Dr. Paxton and Dr. Nakagawa</u>

Plaintiff argues that the ALJ "stated that she gave significant weight to the opinions of [Dr. Paxton] and [Dr. Nakagawa]," yet "made findings significantly different than their opinions."  (Mot. for Summ. J. at 18.)  Plaintiff also accuses the ALJ of "playing doctor" in rejecting portions of Dr. Paxton's and Dr. Nakagawa's opinions without a

"medical basis" for doing so.  (Id.)  Plaintiff's arguments are not well taken.[5]

       a.  Dr. Nakagawa

Dr. Nakagawa examined plaintiff on June 15, 2010.  (AT 298.)  Dr. Nakagawa noted that plaintiff was an "adequate informant" and that she was treated with antidepressants, which decreased plaintiff's auditory hallucinations.  (Id.)  As of the date of the examination, plaintiff reported being sober for three months.  (AT 299.)  Plaintiff also reported attending Narcotics Anonymous meetings once per week, doing chores, watching television, and walking.  (AT 300.)  Dr. Nakagawa noted that plaintiff was "oriented to time, place, and person," during the examination.  (Id.)  Plaintiff's speech "was relevant and coherent," and she had "no problems with psychomotor gait or movement."  (Id.)

Dr. Nakagawa performed a Wechsler Adult Intelligence Scale test, a Wechsler Memory Scale test, a Bender Gestalt test, a Trail Making Test, and a Test of Memory Malingering.  (AT 300-01.)  Dr. Nakagawa noted that the results "were considered a reliable, valid measure of current functioning" because plaintiff "put forth good effort" during testing.  (AT 300.)  From these tests, Dr. Nakagawa found that plaintiff had "overall borderline functioning with borderline cognitive abilities.  Screening measures do not indicate brain damage.  There is no evidence of malingering."  (AT 301.)  Dr. Nakagawa noted that plaintiff was "in remission and will participate in a residential program."  (Id.)

With respect to plaintiff's functional limitations, Dr. Nakagawa opined that plaintiff "could complete simple job instructions" but that plaintiff's disorder would "negatively impact her ability to consistently relate to co-workers, supervisors, and the public and to consistently deal with routines and changes in work routines."  (Id.)

---

[5] The second half of plaintiff's moving papers includes a repackaged version of her first argument — that the ALJ improperly evaluated the medical evidence — insofar as the ALJ improperly "cherry picked" from the opinions of Dr. Paxton and Dr. Nakagawa.  This argument is not well taken for the same reasons discussed above, and where the medical "evidence is susceptible to more than one rational interpretation," the ALJ's interpretation controls.  Burch, 400 F.3d at 679.

The ALJ gave Dr. Nakagawa's opinion significant weight. (AT 22.) With respect to the functional limitations that Dr. Nakagawa noted, the ALJ stated:

> The limitations in interactions are accommodated by the social limitations in the established residual functional capacity. The difficulty in changes in work routine are accommodated by the limitation to simple work which generally has few if any changes in work routine.

(AT 23.)

In arguing the ALJ improperly "cherry picked" (Mot. for Summ. J. at 18) and "improperly rejected" (id. at 20) portions of Dr. Nakagawa's opinion, plaintiff principally contends that the ALJ's RFC is inappropriate because it "ignores [Dr.] Nakagawa's opinion that plaintiff would have problems with" work routines themselves.[6] (Mot. for Summ. J. at 23.) However, Dr. Nakagawa never indicated that plaintiff was absolutely *unable* to follow a routine, but rather that plaintiff's disorder would "negatively impact her ability" to deal with routines. (AT 301.) In other words, Dr. Nakagawa opined that plaintiff's impairments "negatively impact" her ability to deal with routines, she did *not* opine that the impairments completely preclude plaintiff from dealing with the sorts of routines inherent in simple work. (AT 23, 301.) The ALJ's RFC assessment is therefore consistent with Dr. Nakagawa's assessed limitations to "simple" tasks and work with minimal changes to routine. (AT 17 (plaintiff has "the following nonexertional limitations: she can understand, remember, and carry out simple instructions; make judgments on simple work-related decisions; and respond appropriately to usual work situations and changes in routine in a work setting. She is limited to no more than occasional interactions with the public, coworkers, and supervisors.").)

In other words, while the medical opinion evidence addressing plaintiff's ability to deal with routines reflects that plaintiff's symptoms "negatively impact" her ability to deal with routines, such evidence does not reflect that plaintiff's symptoms completely *prevent*

---

[6] Plaintiff's "cherry picking" argument notwithstanding, "[i]t is not necessary to agree with everything an expert witness says in order to hold that his testimony contains substantial evidence." Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (quotation marks omitted).

her from dealing with routines. By limiting plaintiff to simple work that involves minimal changes to routine, the ALJ thus properly "translated" Dr. Nakagawa's opinion about plaintiff's limitations into "concrete restrictions," and this "does not, as [plaintiff] contends, constitute a rejection of" the aspect of the opinion regarding plaintiff's "negatively impacted" ability to cope with routines. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). The ALJ's determination that plaintiff is at least somewhat able to deal with routines is also consistent with other evidence of record; for instance, evidence suggests plaintiff "can do household chores, manage her own finances, and perform other simple routine tasks" such as "run[ning] errands, shop[ping], tak[ing] public transportation, and keep[ing] doctor appointments." (AT 16-17 (citing evidence of record, including AT 141-48 and AT 166-73 (various Function Reports and Disability Reports, some of which plaintiff herself completed, indicating that plaintiff completes her own shopping, takes public transportation, runs errands, handles her own hygiene/personal care, etc.).) Thus, medical opinion evidence and other evidence of record is consistent with the ALJ's determination that plaintiff has at least some ability to deal with the kinds of routines inherent in simple work.

Accordingly, plaintiff has not shown that the ALJ erred in her analysis of Dr. Nakagawa's opinion, Dr. Nakagawa never opined that plaintiff's symptoms render her absolutely incapable of dealing with work routines, and plaintiff has not shown that the ALJ's RFC assessment fails to account for a "negatively impacted" ability regarding "routine" as described in that opinion.

      b.  Dr. Paxton

Dr. Paxton, a non-examining State agency physician with a specialty in psychiatry, performed a Psychiatric Review Technique ("PRT") form and completed a Mental Residual Functional Capacity Assessment ("MRFCA") on September 1, 2010. (AT 308-21.)

In the PRT, Dr. Paxton found that plaintiff had an affective disorder, a personality disorder, and a substance addiction disorder. (AT 310, 313-14.) Dr. Paxton noted that

1   plaintiff had mild restrictions in activities of daily living; mild difficulties in maintaining

2   social functioning; mild difficulties in maintaining concentration, persistence, or pace; and

3   no "repeated episodes of decompensation, each of extended duration." (AT 316.)

4         In the MRFCA, Dr. Paxton noted that plaintiff was generally not significantly

5   limited in areas of understanding and memory, sustained concentration and persistence,

6   social interaction, and adaptation. (AT 319-20.) Dr. Paxton opined that plaintiff had a

7   "moderately" limited ability to carry out detailed instructions and a "moderately" limited

8   ability to interact appropriately with the general public.[7] (Id.) Dr. Paxton opined that

9   plaintiff "may" have difficulty interacting with the public and has an "adequate" ability to

10  interact with coworkers and bosses. (AT 321.) Further, Dr. Paxton concluded that

11  plaintiff "may" have difficulty with detailed tasks but has adequate attention and

12  concentration for "simple 1-2 step tasks." (Id.)

13        The ALJ gave Dr. Paxton's opinion significant weight because "the limitations . . .

14  assessed are consistent with [plaintiff's] diagnosed impairments, level of treatment, and

15  level of functioning. The limitations assessed by [Dr. Paxton are] generally consistent

16  with the limitations in the established residual functional capacity in that they include

17  limitations to simple work with some social limitations." (AT 23.)

18        At one point, the ALJ's decision inaccurately stated that "Dr. Paxton indicated that

19  [plaintiff] would not tolerate *any* public interactions." (AT 23 (emphasis added).)

20  However, this statement misconstrues the evidence of record, as Dr. Paxton did not so

21  opine. Earlier in her decision, the ALJ more accurately restated Dr. Paxton's opinion that

22  plaintiff "*may have difficulty* interacting with the public." (AT 21 (emphasis added); see

23  also AT 321.) In discounting this *inaccurate* misstatement of Dr. Paxton's opinion, the

---

[7] Plaintiff argues that Dr. Paxton's opinion that plaintiff had "moderate difficulties" conflicts with treatment records and "the observations of plaintiff's family." (Mot. for Summ. J. at 20.) However, plaintiff failed to specify *how* such evidence undercuts Dr. Paxton's "moderate" assessment. (Id.) Even assuming *arguendo* that treatment records and family reports reveal significant functional limitations, plaintiff has not compellingly shown that the ALJ should have credited such records/reports over the medical opinion evidence that plaintiff's functional limitations were "moderate."

ALJ stated:

> [T]he record better supports a conclusion that [plaintiff] could tolerate up to occasional public contact. This is consistent with the fact that her auditory hallucinations are well accommodated when she is not using drugs and when she takes her medication as prescribed. She is generally pleasant and cooperative, and there is no evidence of excessive anxiety or other difficulties in simple interactions with others.

(AT 23.)

In arguing the ALJ erred by "cherry picking" certain portions of Dr. Paxton's opinion, plaintiff seizes upon the ALJ's *misstatement of* that opinion and argues that the ALJ improperly rejected the misstated portion. (Mot. for Summ. J. at 23-24.) Plaintiff argues:

> [C]ontrary to the opinion of the ALJ, [Dr.] Paxton specified that plaintiff would not tolerate *any public interactions* . . . . The ALJ noted that plaintiff's limitations in interactions are accommodated by the social limitations in the established residual functional capacity, i.e., a limitation to occasional contact with the public, coworkers and supervisors. This is not what [Dr.] Paxton opined; Dr. Paxton stated that plaintiff could have *no public contact*. As such there is no medical evidence contrary to their findings, and the ALJ is merely playing doctor.

(Mot. for Summ. J. at 23-24 (emphasis added).)

On the court's review of Dr. Paxton's opinion, Dr. Paxton opined that plaintiff "may" have "difficulty" interacting with public, but he never opined that plaintiff cannot have *any* public contact. (See AT 321.) Plaintiff cites to no portion of Dr. Paxton's opinion, and the court finds no such portion, suggesting Dr. Paxton opined that plaintiff is unable to have *any* public contact. To the contrary, as noted above, Dr. Paxton stated that plaintiff "may" have difficulty interacting with the public but that she is able to interact with coworkers and bosses. (Id. ("Due to" her symptoms, plaintiff "may have diffic[ulty] interacting [with] public but adeq[uate] for coworkers [and] bosses.").) Contrary to plaintiff's suggestion, then, Dr. Paxton's opinion does not limit plaintiff to work having "no public contact." (Mot. for Summ. J. at 24.)

Moreover, even if the ALJ erred in misquoting Dr. Paxton on this issue, the ALJ's RFC assessment incorporated an *accurate* reading of Dr. Paxton's opinion. The ALJ's

12

RFC assessment limits plaintiff to work involving "no more than occasional interactions with the public, coworkers, and supervisors," (AT 17), which accounts for plaintiff's possible "difficulty" interacting with the "public" and her "adequate" ability to interact with "coworkers and bosses" (AT 321).  The ALJ's RFC assessment is consistent with Dr. Paxton's opinion — when that opinion is accurately quoted —  and is supported by substantial evidence.  (Compare AT 17 (limiting plaintiff to "occasional" interactions with public, coworkers, and bosses) with AT 321 (opining that plaintiff "may" have "difficulty" interacting with "public" and "adequate" ability to interact with coworkers and bosses).)  As the ALJ noted, these limitations are also "consistent with the fact that [plaintiff's] auditory hallucinations are well accommodated when she is not using drugs and when she takes her medications as prescribed."  (AT 23.)  Accordingly, to the extent the ALJ erred in misquoting Dr. Paxton's opinion and/or erred in proceeding to discount the misquoted portion of the opinion, such error was harmless.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error analysis applicable in judicial review of social security cases).

Ultimately, while plaintiff identifies treatment notes, reports, and other evidence she believes support her interpretations of the opinions of Drs. Nakagawa and Paxton, the existence of some evidence supporting plaintiff's arguments does not automatically render the ALJ's decision contrary to substantial evidence.  The "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence," Tommasetti, 533 F.3d at 1041, and here, the ALJ did not err in analyzing the opinions of Drs. Nakagawa and Paxton within the context of the totality of the evidence, or in reasonably translating such opinions into a concrete RFC assessment.  Plaintiff has not shown that the ALJ implicitly rejected (or improperly "cherry picked") portions of either opinion.  Here, on a close and accurate reading of these medical opinions, the ALJ's RFC assessment is consistent with both opinions and the great weight of the other evidence of record.  Plaintiff has not shown that any errors by the ALJ were more than harmless.

////

V.   CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is free from prejudicial error and is supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 21) is GRANTED.

3. Judgment is entered for the Commissioner.

4. The Clerk of Court is directed to close this case and vacate all dates.

IT IS SO ORDERED.

Dated:  January 10, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE